IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CARRIE S. H.,[1] | Case No. 3:23-cv-01347-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Carrie S. H. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///
///
///
///
///

## BACKGROUND

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in December 1969, making her forty-five years old on January 16, 2015, her alleged disability onset date.[2] (Tr. 27, 65.) Plaintiff is a high school graduate and has past work experience as a graphic artist and art director. (Tr. 27, 72.) In her application for benefits, Plaintiff alleged disability due to ankylosing spondylitis,[3] enthesitis, inflammatory bowel disease, lumbar stenosis, and osteoarthritis. (*Id.* at 218.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on September 3, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 113-14.) Plaintiff and her attorney appeared in person at an administrative hearing on September 9, 2020, and a vocational expert appeared by telephone and testified at the

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2019 (Tr. 19) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2019, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

[3] "Ankylosing spondylitis is a type of arthritis that causes inflammation, pain, stiffness, and reduced flexibility in the spine." *Daniel S. v. Kijakazi*, No. 4:20-CV-00578-REP, 2022 WL 3357422, at *3 (D. Idaho Aug. 15, 2022); *see also Moen v. Berryhill*, No. 2:17-CV-00392-CWD, 2019 WL 1104175, at *5 (D. Idaho Mar. 8, 2019) (noting that "ankylosing spondylitis is a form of inflammatory arthritis").

PAGE 3 – OPINION AND ORDER

hearing. (*Id.* at 34-63.) On November 2, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 14-33.)

On September 5, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id. at 724-25*.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If

the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 18-29.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 16, 2015, the alleged onset date. (*Id.* at 19.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "lumbar and cervical spine disorder; ankylosing spondylitis; and, bilateral hand disorder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb, (2) Plaintiff has no limit on balancing, and (3) all other postural activities are limited to occasional. (*Id.* at 22.) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a graphic designer and art director. (*Id.* at 27.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as an office helper, price marker/pricer, and tanning salon attendant. (*Id.* at 28.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ "failed to provide specific, clear and convincing reasons for discounting Plaintiff's statements regarding her symptoms which resulted in a defective residual functioning capacity and a decision that is not supported by specific evidence." (Pl.'s Opening Br. ("Pl.'s Br.") at 5-15, ECF No. 8.)

///

As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence. The Court therefore affirms the Commissioner's decision.

I.      PLAINTIFF'S SYMPTOM TESTIMONY

   A.      Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

   B.      Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 27, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.") The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

PAGE 6 – OPINION AND ORDER

### 1. Specificity Requirement

Plaintiff argues that the ALJ failed to "identify specific testimony to be discounted" and only "summarized the medical records pertaining to Plaintiff's impairments." (Pl.'s Br. at 6-7, 9.) Plaintiff argues that an "ALJ must explain what testimony is not credible and why." (*Id.* at 9, citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1113 (9th Cir. 2014)).

Plaintiff is correct that Ninth Circuit case law "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient because the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and concluding that the ALJ's findings were "insufficient to meet 'our requirements of specificity'") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit precedent "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant]'s testimony [is] inconsistent with her medical treatment." *Id.* (citations omitted).

In *Lambert*, the Ninth Circuit noted the ALJ's use of "boilerplate" language and found that the "ALJ never identified which testimony she found credible, and never explained which evidence contradicted that testimony." *Id.* (simplified). Here, in contrast, the ALJ specifically acknowledged Plaintiff's symptom testimony regarding her neck, hip, back, and hand pain and found that "[t]he medical record does not support the severity of [Plaintiff]'s alleged physical limitations." (Tr. 24.) In support of discounting Plaintiff's symptom testimony, the ALJ cited

specific medical evidence from the relevant period and did not merely summarize the record. (*See id.* at 24-26.)

First, the ALJ acknowledged Plaintiff's testimony regarding "severe neck and back pain" and her allegation that her "impairments limited her ability to stand, walk, and sit, and . . . [required her] to change positions throughout the day." (*Id.* at 25.) The ALJ then cited records of physical examinations finding that Plaintiff had "normal range of motion" in her neck throughout 2015-2018 (*see* Tr. 24)—which Plaintiff acknowledges. (*See* Pl.'s Br. at 9, acknowledging medical records cited by the ALJ "showing normal neck range of motion" and explaining that "the records related to [Plaintiff's] neck issues begin in 2019.") Furthermore, the ALJ addressed that Plaintiff was "assessed/diagnosed with cervicalgia" on December 18, 2019—a few weeks before her DLI of December 31, 2019—and "was given a referral to physical therapy, cervical traction, and started on Flexiril therapy." (Tr. 24.) The ALJ also noted that Plaintiff received an x-ray "in June 2020 (after her date last insured)" that showed "[d]egenerative disc disease at C6-7 with disc height loss and endplate spurring." (*Id.*) The ALJ pointed out, however, that "[t]he alignment was normal . . . [t]here was no acute fracture identified . . . [t]he facet joints were normal . . . [Plaintiff] had no prevertebral soft tissue swelling . . . [and t]he C1-2 relationship was normal" (*id.*)—which Plaintiff does not dispute.

Next, the ALJ acknowledged Plaintiff's allegations regarding "severe pain in her back and hips" and Plaintiff's testimony that her condition "limits her ability to stand, walk, and sit" and makes it necessary to "change positions throughout the day." (*Id.* at 25.) The ALJ cited specific medical records that appeared to be inconsistent with Plaintiff's symptom testimony (*id.* at 24-26), and did not merely provide "medical summaries," as Plaintiff contends. (Pl.'s Br. at 9.) For example, regarding Plaintiff's alleged back and hip pain from ankylosing spondylitis, the

ALJ noted that Plaintiff was seen for that condition in October 2014, two months prior to the relevant period, and reported to her treating physician, Dr. Anna Macasa, that "[s]he is doing well currently" and "denies any flares" with "[n]o episodes of joint pain or swelling." (*Id.* at 25, citing Tr. 329.) The ALJ also cited the following evidence from the relevant period: in April 2015, Plaintiff reported "[n]o recent episodes of joint pain or swelling[,]"and Dr. Macasa's physical examination found Plaintiff's "[s]acroiliac joint is nontender to palpation bilaterally" (*id.*, citing Tr. 332-33); in January 2016, Dr. Macasa noted that Plaintiff's ankylosing spondylitis in her spine was "under good control with IV Remicade[,]" and prescribed Etodolac for Plaintiff's "intermittent hip pain" (*id.*, citing Tr. 338); in February 2016, Plaintiff reported that "she is feeling much better" after taking Etodolac (*id.*, citing Tr. 341); in August 2016, Dr. Macasa increased the Remicade dose to 600 mg (*id.*, citing Tr. 344); and in January 2017, Dr. Macasa noted that Plaintiff "denies any joint pain or stiffness during this visit" and "had been doing well lately esp[ecially] with recent increased Remicade dose of 600 mg IV back in August 2016." (*Id.*, citing Tr. 347.)

Finally, the ALJ acknowledged Plaintiff's allegation "that she has problems with her hands that limit her ability to lift, carry, and use her hands while working." (*Id.* at 26.) The ALJ then considered Plaintiff's medical treatment records from the relevant period and found that they generally indicate that Plaintiff "had no synovitis, no effusions, and full range of motion of the MCP joints, and wrist joints were without pain." (*See* Tr. 26, citing specific medical records from 2015 through 2019.)

In sum, this is a not a case in which the ALJ "never identified which testimony she found credible, and never explained which evidence contradicted that testimony." *Lambert*, 980 F.3d at 1266 (simplified). As noted above, the ALJ specifically addressed Plaintiff's complaints of

PAGE 9 – OPINION AND ORDER

debilitating neck, back, hip, and hand pain (*see* Tr. 24-26), and the ALJ cited specific medical records from the relevant period that appeared inconsistent with the alleged severity of Plaintiff's symptoms. (*See id.*) The ALJ therefore met the Ninth Circuit's specificity requirements. *Cf. Treichler*, 775 F.3d at 1103 (noting that an "ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints" and finding that an "ALJ's vague allegation that a claimant's testimony is not consistent with the . . . medical evidence, without any specific findings in support of that conclusion is insufficient for our review") (simplified).

### 2. Clear and Convincing Reasons Requirement

Plaintiff argues that the ALJ "has not provided clear and convincing reasons for discounting Plaintiff's symptom testimony." (Pl.'s Br. at 13.) The Court disagrees and finds that the ALJ properly discounted Plaintiff's symptom testimony based on the medical record (including improvement with treatment) and Plaintiff's daily activities and therefore provided "specific, clear and convincing reasons for the rejection." *Ghanim*, 763 F.3d at 1163 (simplified).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

///

### a. Objective Medical Evidence

As discussed above, the ALJ discounted the severity of Plaintiff's alleged symptoms based on objective medical evidence in the record. *See Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021) ("An ALJ may consider inconsistency between a claimant's symptom testimony and the objective medical evidence in the record in determining whether to discount the claimant's symptom testimony." (citing 20 C.F.R. § 404.1529(c)(1)-(2) and *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012))).

Plaintiff argues that the ALJ "mischaracterized chart notes" from 2018 by "indicating [that] they reflected that Plaintiff 'reported she was doing well'" when the notes actually stated that Plaintiff "had" been doing well. (Pl.'s Br. at 11, citing Tr. 25, which cited Tr. 350, 353, 356.) Plaintiff's point is well-taken, but even without that evidence, the ALJ provided clear and convincing reasons supported by substantial evidence for discounting the alleged severity of Plaintiff's back pain based on inconsistencies with the overall medical record. *See Metcalf v. Berryhill*, No. 316CV05432RSLJRC, 2017 WL 2270254, at *3 (W.D. Wash. Apr. 14, 2017) ("Based on the record as a whole, the Court concludes that the ALJ provided clear and convincing reasons for his failure to credit fully the plaintiff's testimony regarding her limitations based on inconsistencies contained in plaintiff's medical records."), *report and recommendation adopted*, 2017 WL 2256892 (May 23, 2017).

As discussed above, the ALJ noted that Plaintiff reported "no episodes of joint pain or swelling" in April 2015 (*id.*, citing Tr. 332-33); in January 2016, Dr. Macasa found Plaintiff's ankylosing spondylitis symptoms "under good control with IV Remicade" (*id.*, citing Tr. 338); in February 2016, Plaintiff's hip pain was "much better" after she started taking Etodolac (*id.*, citing 341); in January 2017, Plaintiff denied any joint pain or stiffness and "had been doing well

PAGE 11 – OPINION AND ORDER

lately" with the increased dosage of Remicade; in October 2018, an MRI of Plaintiff's spine showed that she had "an essentially normal sacrum and sacroiliac joints without demonstrated sequela of ankylosing spondylitis" (*id.,* citing Tr. 537); and in December 2019, the provider noted that Plaintiff's "sacroiliac joints had slight tenderness" but that Plaintiff's ankylosing spondylitis was "stable with medication" (*id.*, citing Tr. 364).

Plaintiff argues that the ALJ was "selective" in citing medical records and overlooked chart notes from January 2018 and April 2018 showing that Plaintiff was "tender to palpitation in the sacroiliac joints bilaterally." (*See* Pl.'s Br. at 11-12, citing Tr. 350, 353, noting "slight" tenderness.) However, "[i]n highlighting the inconsistencies between . . . [p]laintiff's reported symptoms and the medical evidence, the ALJ was not required to discuss every other potentially relevant piece of evidence." *Allen v. Comm'r of Soc. Sec. Admin.*, No. CV-22-2154-PHX-JAT, 2024 WL 959583, at *3 (D. Ariz. Mar. 6, 2024) (noting that "in interpreting the evidence and developing the record the ALJ does not need to 'discuss every piece of evidence'" (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003))); *see also Young*, 845 F. App'x at 520 (acknowledging that the claimant's medical records "occasionally mentioned back pain[,]" noting the claimant's "minimal treatment record[,]" and finding that "the objective medical evidence in the record did not support [the claimant]'s symptom testimony") (citation omitted). Despite the ALJ's failure to cite certain treatment records, it was reasonable for the ALJ to discount the alleged severity of Plaintiff's back pain based on conflicts between the overall medical record and the level of impairment Plaintiff claimed.

Plaintiff argues that "some" of her medical records indicate that she was "positive for bilateral hand/joint pain." (Pl.'s Br. at 12.) However, the ALJ acknowledged that evidence and noted that Plaintiff appears to have successfully treated her hand pain with CBD oil. (Tr. 26,

PAGE 12 – OPINION AND ORDER

citing Tr. 347 and 350, Plaintiff's treatment notes from January 2017 and January 2018 stating that Plaintiff was using CBD oil and that it "seems to work"). Plaintiff does not deny that she treated her hand pain with CBD oil or that it was effective. Thus, the Court finds that it was reasonable for the ALJ to discount the alleged severity of Plaintiff's hand pain based on her favorable response to treatment. *See Tommasetti*, 533 F.3d at 1039-40 (noting the plaintiff's "favorabl[e]" response "to conservative treatment including physical therapy and the use of anti-inflammatory medication" and finding that "[s]uch a response to conservative treatment undermines [the claimant]'s reports regarding the disabling nature of his pain").

Plaintiff also argues that the ALJ failed to address her "issues with focus and concentration due to fatigue." (Pl.'s Br. at 13.) However, the ALJ acknowledged Plaintiff's allegations that "methotrexate . . . affected her concentration, causes brain fog, and increased her fatigue" (Tr. 22), and that Remicade "would cause her to feel tired and fatigued for 2-3 days." (*Id.* at 23.) The ALJ also cited a medical record dated February 18, 2016, reporting that Plaintiff's fatigue had "almost completely resolved." (*Id.*, citing Tr. 341.) The Court finds that the ALJ appropriately addressed Plaintiff's issues with focus and concentration due to fatigue.

The Court concludes that inconsistencies between Plaintiff's alleged symptoms and the objective medical evidence in the record was a clear and convincing reason to discount her testimony and was supported by substantial evidence.

      **b.**  **Daily Activities**

The ALJ also discounted Plaintiff's symptom testimony on the basis of inconsistencies between Plaintiff's reported daily activities and her alleged inability to work. (Tr. 24-26.) In discounting Plaintiff's testimony, the ALJ considered Plaintiff's ability to perform light housework which involved "washing dishes, vacuuming, picking things up, and dusting for 20-

30 minutes at a time," and her ability to shop for groceries, chop vegetables, and prepare dinner. (*Id*. at 24, citing Tr. 228-35.) The ALJ also noted that Plaintiff had no problems with personal care and was able to drive a car, manage her finances, and use a computer to access the internet and shop online. (*Id*.) The ALJ also discussed Plaintiff's ability to focus for 30-45 minutes at a time, complete tasks that she started, go to a pool once a week for stretching and exercise, and volunteer a few hours a week at a cat shelter. (*Id*.)

Plaintiff insists that she is only able to handle light housework "on a modified and carefully paced basis[,]" and argues that the ALJ "repeatedly overstated Plaintiff's activities, ignoring the manner in which . . . [she] performed them." (Pl.'s Br. at 7.) However, the record shows no discrepancy between the ALJ's discussion of Plaintiff's daily activities and the daily activities that Plaintiff reported in her March 2020 Function Report and to which she testified in her September 2022 hearing before the ALJ. (Compare Tr. 24-27 (ALJ Decision) with Tr. 228 (Function Report) and Tr. 34-63 (Oral Hearing Transcript)). Furthermore, "[a]lthough the evidence of [claimant]'s daily activities may also admit of an interpretation more favorable to [claimant] . . . a [reviewing court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the Court finds that it was reasonable for the ALJ to discount Plaintiff's testimony regarding her reported neck, back, hip, and hand pain based on inconsistencies with her activities of daily living. (*See* Tr. 24-26.)

Plaintiff argues that her "daily activities . . . are not comparable to work activity" and that the ALJ "provided no analysis to suggest that her activities demonstrate transferable skills." (Pl.'s Br. at 8.) Although "transferability of daily activities to the work setting is a valid reason to discredit [a p]laintiff's testimony . . . it is equally reasonable for [an] ALJ to rely on the extent

PAGE 14 – OPINION AND ORDER

that a [p]laintiff's daily activities 'contradict claims of a totally debilitating impairment.'" *Cook v. Comm'r of Soc. Sec.*, No. 2:16-cv-00061-FVS, 2017 WL 1479430, at *6 (E.D. Wash. Mar. 29, 2017) (citing *Molina*, 674 F.3d at 1113)), *report and recommendation adopted*, 2017 WL 1455008 (Apr. 21, 2017). It was therefore appropriate for the ALJ to discount Plaintiff's symptom testimony based on Plaintiff's daily activities that contradicted her claims of total disability. (*See* Tr. 24-26.)

Finally, Plaintiff faults the ALJ for failing "to explain how [her daily] activities allegedly undermined Plaintiff's testimony about her symptoms." (Pl.'s Br. at 8.) However, "[e]ven when an agency explains its decision with less than ideal clarity, [a reviewing court] must uphold it if the agency's path may be reasonably discerned." *Molina*, 674 F.3d at 1113 (simplified). Here, the ALJ first addressed Plaintiff's symptoms regarding neck, back, hip, and hand pain; next, the ALJ discussed and cited extensive medical records that appeared inconsistent with Plaintiff's alleged symptoms; finally, the ALJ noted that, "[d]espite [Plaintiff's] impairments," Plaintiff reported volunteering and exercising outside the home in addition to her ability to drive, use the computer, and perform light housework. (Tr. 24-26.) The Court can "reasonably discern" the ALJ's underlying reasoning, and concludes that the ALJ properly discounted Plaintiff's symptom testimony on the basis of Plaintiff's daily activities. *See Molina*, 674 F.3d at 1113.

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so).

///

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and is supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 13th day of September, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge